**James H. KINDRED, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 285S67.

Supreme Court of Indiana.

June 8, 1988.

Michael E. Hunt, Monroe County Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson–Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellant James H. Kindred appeals his conviction following a jury trial for one count of perjury, a class D felony, (Ind.Code § 35–44–2–1) and two counts of forgery (uttering), a class C felony, (Ind. Code § 35–43–5–2). The jury acquitted the defendant of the charge of habitual offender. Finding aggravating circumstances, the trial court enhanced each sentence and ordered them to be served consecutively for a total of twenty years imprisonment.

Defendant presents forty-nine (49) allegations of error in his appellate brief. We have regrouped these issues into the following eleven categories:

1. waiver of right to counsel;
2. alleged defects in the information;
3. joinder of offenses;
4. discovery procedure;
5. jury selection;
6. State's Motion for Continuance;
7. prosecutor's comments during opening statements;
8. admissibility of evidence;
9. prosecutor's comments during closing arguments;
10. sufficiency of evidence; and,
11. reasonableness of sentence.

The evidence most favorable to the judgment reveals that defendant was employed as a paralegal by an attorney in Martinsville, Indiana. In January, 1984, the defendant, using false identification, procured a duplicate driver's license under the name "Gary Hooser." Using the license, defendant set up multiple bank accounts in Hooser's name in Bloomington, Indiana. In February, 1984, defendant took blank checks from his employer, made them out to the order of "Hooser Para Legal Firm/Gary D. Hooser," filled in the amounts, signed his employer's name, and then cashed them at various bank branches in Bloomington.

### 1. Waiver of Right to Counsel

The defendant conducted his own defense in the instant case with the assistance of appointed counsel acting in an advisory capacity. Defendant now contends the trial court erred in failing to advise him of the dangers and disadvantages of proceeding *pro se* and asserts the record is silent as to an affirmative waiver of his Sixth Amendment right to counsel.

We have previously recognized that a defendant requesting to proceed *pro se* should be fully advised and forewarned of the hazardous adventure that awaits him. *Nation v. State* (1983), Ind., 445 N.E.2d 565. In *Faretta v. California* (1975), 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed. 2d 562, 581, Justice Stewart noted:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. [citations omitted]. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 US, [269] at 279, 87 L Ed 268, 63 S Ct 236, 143 ALR 435.

■ Viewing defendant's argument in the context of the totality of the circumstances in this case, we find it to be without merit. First, we note defendant is no stranger to the criminal justice system. He claims to have over ten years experience as a paralegal and claims to have been involved as a lay advocate in over three hundred adversary proceedings. Moreover, we note he has been involved both as a defendant and an appellant in numerous judicial proceedings. *See, e.g., Kindred v. State* (1988), Ind., 521 N.E.2d 320; *State ex rel. Kindred v. Morgan Circuit Court* (1983), Ind., 455 N.E.2d 328; *Kindred v. State* (1977), 173 Ind.App. 624, 365 N.E.2d 776; *Kindred v. State* (1974), 160 Ind.App. 418, 312 N.E.2d 100; *Kindred v. State* (1970), 254 Ind. 127, 258 N.E.2d 411; *Kindred v. State* (1970), 254 Ind. 105, 258 N.E.2d 53; *Kindred v. State* (1970), 254 Ind. 73, 257 N.E.2d 667.

The record shows defendant to be literate, competent and fully aware of his right to counsel. Prior to the appointment of pauper counsel, defendant articulated a preference for proceeding *pro se*, despite the trial court's warning of the perils inherent in self-representation. Defendant subsequently accepted appointed counsel on April 24, 1984. The following month, de-

fendant moved to be designated co-counsel in the case. In support of his motion, defendant cited his alleged expertise in the field of constitutional law and his experience as a paralegal. The trial court granted the motion, and defendant proceeded to file dozens of *pro se* motions and became directly involved in the course of numerous pre-trial proceedings. In August, 1984, defendant asserted his right to proceed *pro se,* pursuant to the United States Supreme Court's ruling in *Faretta, supra.* The trial court granted this motion but instructed the public defender to continue to assist defendant in an advisory capacity throughout all stages of the proceedings. The record demonstrates defendant was not only aware of the dangers and disadvantages of self-representation, but that he availed himself of the opportunity to avoid those perils by engaging in effective consultation with the public defender on numerous occasions during the course of pre-trial proceedings and the trial itself. In fact, the public defender occasionally became directly involved in the proceedings themselves upon the request of both defendant and the trial court.

We find no error on this issue.

### 2. *Alleged Defects in the Information*

Defendant predicates error on the trial court's refusal to dismiss the charges due to an alleged defect in the original charging information and upon alleged improprieties involving the State's subsequently amended information.

In addition to the perjury count, the original information charged two counts of making a forged instrument and two counts of uttering a forged instrument. Attached to the information were photostatic copies of the two checks involved: check # 125 drawn on the First National Bank of Martinsville, and check # 173 drawn on the Bank One of Columbus. De-

fendant moved to dismiss the charges pursuant to Ind.Code § 35–34–1–4(a)(11) because the information 1) failed to allege a defrauded party, and 2) did not specifically designate which counts were based on the making and uttering of which instrument. At a hearing on defendant's motion, the State dismissed the two counts of making a forged instrument and moved to amend the information with respect to the remaining counts. Without ruling on defendant's motion to dismiss, the court granted the State's motion over the defendant's objection.

 It is well settled that a charging instrument must sufficiently apprise the defendant of the nature of the charges against him so that he may anticipate the proof and prepare a defense in advance of trial. *Smith v. State* (1984), Ind., 465 N.E. 2d 702; *Griffin v. State* (1982), Ind., 439 N.E.2d 160, *ovr'ld in part on other grounds, Bailey v. State* (1985), Ind., 472 N.E.2d 1260. We find the original information in this case adequately complied with this requirement and sufficiently complied with Ind.Code § 35–34–1–2. The failure of the State in this case to specifically name the defrauded parties was not a defect because the identity of the parties is clearly ascertainable in the attached instruments. It is the allegation and proof that the defendant had the *intent to defraud* which is crucial to the conviction. *Darnell v. State* (1972), 257 Ind. 613, 277 N.E.2d 366; *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239. Moreover, the failure of the State to specifically designate which counts were predicated on which instrument was an immaterial defect properly corrected by way of an amended information filed pursuant to Ind.Code § 35–34–1–5, which permits the State to correct any "defect, imperfection or omission in form which does not prejudice the substantial rights of the defendant." [1] The amended information was filed

---

1. In a related argument, defendant asserts the trial court was required to grant the motion to dismiss before permitting the state to amend the information. He cites us to Ind.Code § 35–34–1–4(d), which provides:

 (d) Upon the motion to dismiss, the court shall:

(1) Overrule the motion to dismiss;

(2) Grant the motion to dismiss and discharge the defendant; or

(3) Grant the motion to dismiss and deny discharge of the defendant if the court determines that the indictment or information may be cured by amendment under section 5 [35–

on July 19, 1984, approximately one month before trial. Defendant neither sought a continuance to accord himself more time to prepare his defense, nor has he shown undue prejudice as a result of the trial court's ruling.

We turn next to the defects allegedly contained in the amended information. In addition to the perjury charge, the amended information charged the defendant with two counts of uttering a forged instrument: Count I referred to "Attached check #125" and Count II referred to "Attached check #173." However, copies of the checks were not attached to the amended information. Defendant filed another motion to dismiss alleging the amended information failed to comport with due process requirements. The motion was overruled.

■ Defendant now asserts he was not sufficiently advised of the nature of the charges because he was unable to discern from the charging instrument what "check #125" and "check #173" referred to. In support of his argument, he cites *Griffin, supra*. *Griffin* involved a prosecution for receiving stolen property. The original information contained a description of the stolen property and names of the owners of the stolen goods. The amended information, however, alleged only that defendant knowingly received stolen property, and there was no description of the property at all or any indication as to the identities of the rightful owners. This Court viewed the inadequacy of the amended information as fundamental error requiring reversal.

We find the amended information in the instant case to be distinguishable. Indiana Code § 35-34-1-14 provides:

In any indictment or information, an averment substantially in compliance with the provisions of this section shall be sufficient.

\* \* \* \* \* \*

(c) It is sufficient to describe a written instrument by any name or designation by which it is usually known or to aver generally the contents of such instrument.

Here each count specifically referred to the check numbers which corresponded to the copies attached to the original information. The amended information was filed to cure specifically the defect in the original information that defendant complained of, that is, to clarify which forged check was the predicate for which offense. That it accomplished this purpose is evident from defendant's memorandum accompanying his motion to dismiss where he acknowledged his assumption that the references in the amended charges related to the copied checks attached to the original information. We would be strained to conclude the amended information did not sufficiently notify the defendant of the nature and character of the charges against him. We hold that the amended information was adequate.

Defendant also contends the information failed to allege all elements of the crime of forgery, and that the trial court erred in giving its final instruction #7, which set forth the elements the State was required to prove in order to convict the defendant of forgery.

■ A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made by another person commits forgery. Ind.Code § 35-43-5-2. Both forgery counts in the information alleged that the defendant, "with intent to defraud, uttered a written instrument ... in such a manner that it purports to have been made by another person, in violation of I.C. 35-4-5-2." The instruction read, in relevant part:

In order for you to convict the defendant of the crime of Forgery, the State must have proved beyond a reasonable doubt

34-1-5] of this chapter and the prosecuting attorney has moved for leave to amend.
The record is silent as to the court's ruling on the motion to dismiss; however, whether we view the court's silence as implicitly overruling the motion or granting the motion with leave to

amend is of no consequence. Overruling the motion would not foreclose the State's amended information nor would granting the motion automatically entitle defendant to discharge. We fail to see any merit in defendant's argument here.

each of the following elements: The defendant with intent to defraud, uttered a written instrument purporting to have been made by another person,....

Defendant argues "lack of legal authority" is an essential element of the crime. We disagree. The information and instruction properly set forth the elements of forgery.

## 3. Joinder of Offenses

Defendant next argues the joinder of the perjury count with the forgery counts was improper because the alleged perjury occurred nearly a month prior to the alleged forgeries, and the State did not allege a legal nexus between the crimes in the charging information. Thus, defendant contends the trial court erred by denying his motion seeking an order to compel the State to elect between counts to be prosecuted.

The criteria for the joinder of offenses in one information is set forth in Ind.Code § 35–34–1–9, which provides in part:

(a) Two [2] or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

\* \* \* \* \* \*

(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

We note first the time lapse between events was not such to make joinder improper in this instance. Second, the evidence adduced at trial reveals defendant gave false information to acquire a driver's license bearing his own picture, but the name and signature of one Gary Hooser. Defendant uttered forged checks made to the order of Gary Hooser. From this, it is logical to infer acquisition of the license constituted part of the plan to cash the forged checks. Joinder was therefore proper in this instance. *See, e.g., Brown v. State* (1979), 270 Ind. 399, 385 N.E.2d 1148 (no error to join counts of theft and sodomy where a stolen bicycle was offered in exchange for unnatural sex acts).

## 4. Discovery Procedure

On May 16, 1984, defendant filed a motion to compel production of exculpatory evidence, specifically, a letter allegedly in the possession of a prosecutor in Morgan County. Said letter was allegedly written by a confidential informer and allegedly contained exculpatory information. At a hearing on the motion, the Monroe County deputy prosecutor indicated she was unaware of any such letter, and that she had already provided the defense with everything in her file. It was also revealed defendant had filed a similar motion in Putnam County where he had other forgery charges currently pending. The Putnam County trial court had previously granted defendant's motion, yet defendant had not yet received the letter. The trial court in the instant case limited defendant's discovery request to exculpatory evidence in the possession of the Monroe County prosecutor's office. Defendant now contends the trial court erred by not compelling the Morgan County prosecutor's office to produce the letter.

On this appeal, defendant has not only failed to show any prejudice whatsoever as a result of the trial court's ruling, but moreover, has failed to show whether the letter actually existed, or what, if anything, it purported to reveal. We therefore find this argument to be without merit.

Defendant also claims error in the trial court's rulings allowing certain evidence to be admitted at trial because the State allegedly failed to timely provide both evidence and pre-trial statements of certain witnesses in contravention to the trial court's discovery orders.

A trial judge has the responsibility to direct the trial in a manner which facilitates the ascertainment of truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant. *Allen v. State* (1982), Ind., 439 N.E.2d 615; *State ex rel. Keller v. Criminal Court of Marion County* (1974), 262 Ind. 420, 317 N.E.2d 433; *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149. Where there has been a failure to comply with discovery

procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. *Reid, supra.* Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Crenshaw v. State* (1982), Ind., 439 N.E.2d 620. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. *Allen, supra; Harris v. State* (1981), Ind., 425 N.E.2d 112. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned. *Wagner, supra; Murray v. State* (1982), Ind., 442 N.E.2d 1012.

■ The record reveals some instances of late disclosure on the part of the State; however, the deputy prosecutor made adequate explanations for the late revelations since, in most cases, the evidence was not available earlier. The defendant made no motion for a continuance to remedy any harm inflicted by the late disclosures. We perceive no purposeful or deliberate failure to produce discoverable items. There is no clear error, and we are unpersuaded defendant has been prejudiced to an extent warranting reversal.

### 5. Jury Selection

Defendant contends the trial court erred in denying his Motion to Strike the Jury Panel. In support of this argument, defendant cites *Leonard v. United States* (1964), 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed. 2d 1028, for the proposition that "exposure of a jury panel prior to trial to the fact that a defendant was convicted in a prior case requires 'automatic disqualification' of the entire panel." Appellant's brief, p. 19.

We do not read *Leonard* to stand for such a broad proposition, nor do we find it controlling in this case. *Leonard* involved a defendant charged with forging endorsements on government checks and transportation of a forged instrument in interstate commerce. The two cases were tried in succession. The jury in the first case announced its guilty verdict in open court in the presence of the jury panel from which the jurors who were to try the second case were selected. The United States Supreme Court reversed the conviction in the second case, holding that defendant's objection to the selection of jurors from the panel who had heard the guilty verdict in the first trial should have been sustained.

The instant case is distinguishable. During the voir dire process, the following colloquy occurred:

The Court: Now, how many people here remember reading or hearing anything about Mr. Kindred in the news media. Okay. Remember who raised their hands and I'll go through you all individually. I'll begin with you Miss Robinson. How do you recall anything about Mr. Kindred?

Miss Robinson: I recall a case that he was involved in several years ago, escaping from Morgan County Jail, apparently with the assistance of several members of his family.

\* \* \* \* \* \*

The Court: \* \* \* All right, you just recall reviewing those sorts of things in the news media?

Miss Robinson: Yes.

The Court: All right, if I would instruct you that this case had nothing to do with anything that may or may not have happened in the past, then I'm not sure what you're referring to exactly, that's really not relevant to the case and I'm not sure whether or not you recall it accurately, are you able to put aside anything you read or heard about Mr. Kindred in the past, and make a decision based

solely upon what you hear in the Courtroom?

Miss Robinson: Considering that I also know individuals that are familiar with members of his family and with these cases, I don't think I could.

The Court: Okay, so you come in here with preconceived notions about this particular case?

Miss Robinson: Yes.

The Court: Do you have any personal knowledge about this case?

\* \* \* \* \* \*

Miss Robinson: The only information that I would have would be from individuals as I mentioned before, have discussed it and from the news media, various newspapers.

The Court: Okay, I'll excuse you at this time Miss Robinson and thank you for coming in and being honest with us. Lenora Keller should come forward at this point if she's here, and take Miss Robinson's place if you would. There are numerous other people who raised their hands and I'm going to speak with you individually, before I get to you, the thing you need to be running through your mind, is whether or not you're able to put aside any preconceived notions about someone and listen to just to the testimony that comes forth in trial. \* \* \*

The trial judge then proceeded to question each of the other panel members who indicated familiarity with defendant through the media, and inquired of each whether they were able to put aside anything they read or heard about defendant and make a decision based solely on the evidence presented at trial. Out of the presence of the jury panel, defendant moved to strike the entire jury panel because of the reference to his prior criminal record. He claimed that revealing the fact of his prior escape trial contaminated the jury panel and substantially prejudiced his right to a fair trial.

To resolve this issue, we will consider the surrounding circumstances to determine whether the trial court abused its broad discretionary powers to regulate the form and substance of the voir dire. In *Stroud v. State* (1983), Ind., 450 N.E.2d 992, a similar question was presented. While finding an absence of reversible error in *Stroud*, we cautioned:

> Neither the trial court nor counsel for the parties should cause a jury to express any facts or reasons for having the opinion he or she does if the prospective juror can satisfactorily establish that he or she has formed an opinion which cannot be set aside in order to fairly or impartially try the case.

450 N.E.2d at 994–95. In *Edwards v. State* (1985), Ind., 479 N.E.2d 541, we rejected a claim of improper voir dire involving exposure to pre-trial newspaper articles regarding the defendant's criminal history.

■ While it would have been preferable in the present case for the jurors to have been individually interrogated outside the presence of the remaining prospective jurors, we are not persuaded reversible error occurred. As in *Edwards*, the trial judge individually questioned the prospective jurors regarding the possibility of prejudice, admonished the jurors to put aside preconceived notions, and ascertained the willingness of each to base his decision solely upon evidence presented at trial. These inquiries were repeated during defendant's unlimited voir dire examination. Under the circumstances of this case, we conclude the corrective actions of the trial court operated to substantially minimize or eliminate any prejudice which may have occurred. We reject defendant's contention of reversible error.

### 6. State's Motion For Continuance

Defendant alleges reversible error arising from the trial court's grant of the State's motion for continuance two days before the scheduled trial.

Defendant filed a motion for speedy trial on May 8, 1984. The court subsequently scheduled the trial for July 13, 1984. On July 11, the prosecutor filed a motion for

continuance due to the unavailability of two state witnesses. The first witness, Capt. Frans Hollander, was the chief investigating officer in the case. In the motion for continuance, the prosecutor failed to state the facts to which Hollander was expected to testify. The second witness, Lt. Clark Mercer, was a handwriting analyst who was unavailable because of a lecturing commitment in Illinois. He was expected to testify that the handwriting on the forged instruments was that of the defendant.

■ Defendant filed a written objection to the State's motion, contending the State failed to comply with the statutory requirements of Ind.Code § 35–36–7–2, which provides:

(a) A prosecuting attorney may move to postpone the trial of a criminal cause because of the absence of a witness whose name is endorsed on the indictment or information, if he makes an official statement:

(1) Containing the requirements of subsections (b)(1) and (b)(2) of section 1 [35–36–7–1] of this chapter;

(2) Showing that the absence of the witness has not been procured by the act of the prosecuting attorney;

(3) Stating the facts to which he believes the witness will testify, and include a statement that he believes these facts to be true; and

(4) Stating that the prosecuting attorney is unable to prove the facts specified in accordance with subdivision (3) through the use of any other witness whose testimony can be as readily procured. Upon request of the defendant the court shall order that the prosecuting attorney's motion and official statement be made in writing.

(b) The trial may not be postponed if:

(1) After a motion by the prosecuting attorney because of the absence of a witness, the defendant admits that the absent witness would testify to the facts as alleged by the prosecuting attorney in his official statement in accordance with subsection (a)(3); or

(2) After a motion by the prosecuting attorney to postpone because of the absence of written or documentary evidence, the defendant admits that the written or documentary evidence exists.

Defendant contended the State's motion was deficient with respect to Hollander because it neither stated the facts to which the prosecutor believed the witness would testify, nor did it state the prosecutor was unable to prove the same facts through the use of another witness. Defendant also contended the prosecutor's motion was void with respect to Mercer because Mercer's name was not listed on the information as required by subsection (a) of the above statute.[2]

Although we agree the State failed to comply with Ind.Code § 35–36–7–2(a)(3) and (4) with respect to Hollander, we note the granting of a continuance due to the absence of a witness not listed on the original information, as was Mercer in this case, is permitted under Trial Rule 53.5. *Drake v. State* (1984), Ind., 467 N.E.2d 686. The State did comply with Trial Rule 53.5 in seeking the continuance due to the unavailability of Lt. Mercer.

Both Ind.Code § 35–36–7–2 and Trial Rule 53.5 provide a means whereby the non-moving party to the proceeding may avoid a continuance in this situation by admitting the absent witness would testify to the facts as alleged by the prosecutor. Because the prosecutor failed to state the facts to which Hollander was to testify, defendant was unable to admit the absent witness would have testified to anything. To have allowed the continuance on the ground Hollander was absent would have been improper because of the State's failure to comply with the statutory require-

---

2. At a hearing on the State's motion for continuance, and in his appellate brief, defendant also argued the State improperly relied on Criminal Rule 4(D) in support of the motion for continuance. Although the prosecutor made continuing references to Criminal Rule 4(D), such references were made to point out that the granting of a continuance under these circumstances would toll the period during which the defendant must be tried under the speedy trial rules. Defendant has failed to present a cogent argument as to how this constituted reversible error.

ment. On the other hand, defendant made no attempt to avoid the continuance by admitting Lt. Mercer would testify that the handwriting on the forged instruments was that of the defendant. Thus, he may not complain the trial court should not have granted the continuance. The decision became one vested in the trial court's discretion, and we find no abuse of that discretion.

Defendant also contends the motion for continuance misrepresented that Lt. Mercer would testify that the handwriting on the forged instruments was that of the defendant because Lt. Mercer later disclosed he had not yet examined the forged checks at the time the motion was filed. Trial Rule 53.5 provides the motion for a continuance due to an absent witness must contain a statement of what facts about which the prosecutor *believes* the witness will testify. Lt. Mercer had examined checks allegedly forged by the defendant in a related case pending in Morgan County. The prosecutor explained she was not aware at the time the motion was filed that Lt. Mercer had not completed the evaluation of the instruments in the instant case. We do not sense any bad faith or intentional misrepresentation by the prosecutor.

■ We further reject defendant's argument that the trial court erred in denying his motion for discharge based on the alleged violation of the speedy trial rule. Criminal Rule 4(D) provides:

If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

The absence of a key witness through no fault of the State is good cause for extending the time period requirements for an early trial. *Woodson v. State* (1984), Ind., 466 N.E.2d 432.

### 7. Prosecutor's Opening Statement

During her opening statement, the prosecutor remarked:

[O]pening statements are an opportunity for both sides to give you a preview of what they expect the evidence will be, and what the issues will be. This is not testimony, this is not evidence. You're not to view what I say as evidence, only the testimony that comes from the witness stand and other physical evidence are you to consider as evidence in making your determination of guilt or innocence. Likewise if the defendant makes an opening statement, you're not to view that as testimony or evidence. The defendant is not obligated to make an opening statement, nor is he obligated to testify, and if he does not testify, you must not hold that against him. But this is an unusual situation with the defendant acting as his own attorney, and you must learn to distinguish between his arguments as an attorney or as his own counsel, and testimony. He may not testify, but if he chooses to testify, he must do it from the witness stand under oath, under penalties of perjury, and subject to the normal rules of impeachment. So I want you to remember what is evidence in this case, and what is argument, and merely statement of the attorneys.

Out of the presence of the jury, defendant objected and moved for a mistrial on the grounds the prosecutor made improper remarks concerning the defendant's anticipated failure to testify. The trial court denied the motion and then admonished the jury as follows:

Ladies and gentlemen of the jury, there is some concern about the confusion in your mind let me take an opportunity at this point to re-clarify that which I discussed with you in voir dire process. It is at this point, the law that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt, we discussed that in the voir dire process. It is the State's obligation in it's

[sic] entirety to prove the case against the defendant, in all elements beyond a reasonable doubt. As I also explained to you earlier, the defendant is under no obligation to prove or explain anything, in fact at the conclusion of the State's case, the defendant can rest without presenting any evidence whatsoever. And ask you to make a decision as to whether or not the State has proven it's [sic] case beyond a reasonable doubt. Does anybody have any questions about that at this point on how that works? All right. The defendant has the right if he so desires to testify, or to call witnesses to testify, he is not required to do so, and you may not hold it against him if he chooses not to do so, does everyone understand that basic premise of the law? It is clear however, in a case where the defendant is representing himself, that you must understand that those arguments made by defendant from counsel table, or those statements made by the defendant during both the opening statements or the closing argument, is not evidence. And is not to be considered by you as evidence. Any evidence that comes to you in this Courtroom will come from the witness stand from any witness, under oath, after they have raised their right hand and taken that oath to tell the truth, the whole truth and nothing but the truth. Opening statements of counsel for either party and closing arguments are not evidence and are not to be considered by you as evidence in making your decision in the case. Opening statements are an attempt by the parties to explain to you what they anticipate the evidence will show. Closing arguments are an opportunity of both parties to attempt to argue the evidence as it was presented, characterize it in a particular way to attempt to persuade you to return a particular verdict. Neither opening statement again, nor closing argument, is evidence, only evidence comes from the mouths of the witnesses from this witness stand here before you. (R. 1282–85).

▮ Defendant contends the trial court erred in denying his motion for mistrial.

In addition, defendant contends the trial court's admonishment compounded the error by reinforcing the objectionable comments. The issues are similar to those raised in *Parsons v. State* (1985), Ind., 472 N.E.2d 915, 916, *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857, where we noted:

Any comment which is subject to interpretation as a comment upon an accused's failure to testify is impermissible. *Griffin v. California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Mayes v. State*, (1984) Ind., 467 N.E.2d 1189, 1196, and cases cited therein. The reason for imposing such restrictions is to shelter the defendant from being penalized for exercising his constitutional privilege not to testify. *Griffin v. California*, 380 U.S. at 614, 85 S.Ct. at 1232–1233, 14 L.Ed.2d at 109–110. Any comment which may be interpreted as implying that the defendant must be guilty or he would have testified cannot be condoned.

In affirming the conviction in *Parsons*, we permitted the comments of the prosecutor because they did not suggest "that the Defendant should testify if he is innocent or reinforce any proclivities the jurors may already have regarding any failure of the Defendant to testify." 472 N.E.2d at 916. We further noted that the prompt admonition of the trial court was sufficient to cure any resulting harm.

Particularly in view of defendant's elected role of conducting his own defense, we find the prosecutor's comments, as well as the trial court's admonishment, entirely appropriate under the circumstances. We find neither error nor prejudice to defendant as a result. The judge accurately stated the law concerning the State's burden and the defendant's right not to testify.

### 8. Admissibility of Evidence

Defendant raises numerous arguments concerning the admissibility of evidence, many of which are couched in terms of the trial court's overruling of defendant's pretrial motions to suppress. We have consistently held that error in overruling a

motion to suppress evidence is not preserved for appellate review unless there is a proper objection when the evidence is offered at trial. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Andrews v. State* (1982), Ind., 441 N.E.2d 194. Defendant failed to articulate in-trial objections to the admissibility of some of the evidence. Nevertheless, we note the trial court, in its sole discretion, granted defendant's specific continuing objections based on the grounds presented in the pre-trial suppression hearings. We find these continuing objections sufficient to preserve the issues for appellate review, noting the grounds for the objection asserted on appeal are the same as those asserted in the record of the suppression hearings.[3] *See, e.g., Andrews, supra,* 441 N.E.2d at 198 (grounds for objection to the admission of evidence asserted on appeal may not differ from those asserted at trial.) We thus proceed to the merits of defendant's allegations of error.

Defendant contends the trial court erred in admitting evidence seized incident to arrest. In a pre-trial suppression hearing, Deputy Sheriff Ed Garner, the arresting officer, testified he had been advised by the sheriff's radio dispatcher that a warrant had been issued for defendant's arrest. Garner admitted he was unaware of the offense for which defendant was to be arrested. Garner arrested defendant at approximately 12:00 noon; however, there is evidence in the record indicating the warrant was not actually issued until approximately 1:15 p.m. Defendant argues that because Garner was unaware of the reason for defendant's arrest, he lacked probable cause, thus the warrantless arrest was illegal and the evidence obtained as a consequence of that arrest should have been excluded. We disagree.

Probable cause justifying an arrest exists when, at the time of the arrest, the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances sufficient in and of themselves to warrant a person of reasonable caution to believe an offense has been or is being committed by the person to be arrested. *See, e.g., Dunaway v. New York* (1979), 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824, 833 n. 9 and cases cited therein; *Green v. State* (1984), Ind., 461 N.E.2d 108; *Fyock v. State* (1982), Ind., 436 N.E.2d 1089; *Benton v. State* (1980), 273 Ind. 34, 401 N.E.2d 697. The existence of probable cause cannot be confined to the facts within the firsthand knowledge of the arresting officer. As we stated in *Benton,* 273 Ind. at 38, 401 N.E.2d at 699:

> Probable cause should be determined on the basis of the collective information known to the law enforcement organization as a whole and not solely to the personal knowledge of the arresting officer. The police force being a unit wherein there is police-channel communication, if an officer acts in good faith reliance upon such information, the arrest will be deemed to have been based on probable cause so long as sufficient knowledge to establish probable cause exists within the organization. [citations omitted].

*See also Moody v. State* (1983), Ind., 448 N.E.2d 660 (officer acting in good faith reliance on police radio dispatcher had probable cause to conduct warrantless search of automobile); *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (investigative stop by officer in reliance on "wanted flyer" issued by another police department held reasonable under Fourth Amendment as long as flyer was issued on the basis of articulable facts supporting a reasonable suspicion that wanted person committed an offense).

Here the record reveals the victim, Joseph Barker, contacted Assistant Police Chief Rick Gibbs concerning defendant's involvement with the missing checks. Gibbs notified Officer Frans Hollander on the evening before defendant was arrested, and the two accompanied the prosecutor to the oral probable cause hearing the next

---

**3.** This comports with prior decision of this Court holding that where a sufficient objection has been made to testimony, it is not necessary to repeat the objection whenever testimony of the same class is offered. *State v. Monninger* (1962), 243 Ind. 174, 177, 182 N.E.2d 426, 427; *Eisenshank v. State* (1926), 197 Ind. 463, 467, 150 N.E. 365, 366.

morning. The record does not disclose who contacted the dispatcher to advise Garner to effectuate defendant's arrest, but the subsequent formal issuance of the arrest warrant evidences that police had probable cause to arrest the defendant. Pursuant to the reasoning in *Benton, supra,* we conclude defendant's arrest comported with the prescriptions of the Fourth Amendment. Thus, any evidence seized as a consequence of defendant's arrest was properly admitted.

Defendant also contends the trial court erred in admitting into evidence State Exhibits # 1 through # 6 (returned checks purportedly made and uttered by the defendant) because the State failed to establish a sufficient chain of custody and failed to connect the documents to the defendant.

Paul Mullins, the assistant vice-president of the First National Bank, testified he was in charge of returned checks and was familiar with a problem concerning six checks written on the account of Joseph Barker. He positively identified State Exhibits # 1 through # 6 as the checks in question, and testified they were in substantially the same condition as they were the first time he received them.

■■■ The rule requiring that a chain of custody be established before an exhibit be admitted into evidence applies with diminishing strictness as the exhibit in question becomes decreasingly susceptible to alteration, tampering or substitution. *Ives v. State* (1981), 275 Ind. 535, 418 N.E.2d 220. Thus, a high degree of scrutiny and a strict showing of chain of custody are not required for unique, non-fungible goods readily identified by a witness. *Id; Woodard v. State* (1977), 267 Ind. 19, 366 N.E.2d 1160. No hint of tampering existed in the instant case. Defendant's chain of custody argument is without merit.

Similarly, defendant's contention the State failed to connect the documents to defendant before tendering the documents into evidence is not a ground for reversal. First, a trial court has discretion in admitting evidence subject to being connected by a later introduction of proof of the fact upon which relevancy depends. *See* R. Miller, *Indiana Evidence* § 104.204 (1984). Second, the relevancy of the checks to the issues in this case is obvious as they were all purportedly made and uttered by defendant. There was no error in admitting them into evidence.

■■■ Approximately one month prior to trial, the State filed, and the court granted, a motion to dismiss with prejudice two counts of making a forged instrument, thereby leaving the defendant charged with two counts of uttering a forged instrument and one count of perjury. Defendant thereafter moved to suppress all evidence supporting the charges of making a forged instrument based on the premise the State was barred under the doctrine of collateral estopped from introducing evidence supporting the dismissed charges to prove defendant uttered forged instruments. The motion was overruled. Defendant now argues the trial court erred in permitting the State to introduce evidence that defendant made the instruments he was charged with uttering.

In support of this argument, defendant relies primarily on the principles articulated in *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. In *Ashe,* six men engaged in a poker game were robbed by masked gunman. Six weeks after being acquitted in a State trial for the robbery of one of the players, the defendant was tried and convicted for the robbery of one of the other players. The Supreme Court of the United States reversed, applying collateral estoppel, the principle that bars relitigation of an ultimate fact once it has been determined by a valid and final judgment, as embodied in the Fifth Amendment guarantee against double jeopardy. The Court held the second trial was impermissible because the question of whether defendant was one of the robbers was conclusively answered in the negative in the first trial. Defendant's reliance in the instant case on *Ashe* and its progeny is misplaced.

We are not presented here with the relitigation of facts conclusively determined in a prior adjudication. Nor are we presented with any double jeopardy question. A dismissal is not tantamount to an acquittal as

it is not an adjudication of guilt or innocence. *Copeland v. State* (1961), 242 Ind. 290, 176 N.E.2d 894, *reh'g denied*, 242 Ind. 290, 296, 178 N.E.2d 463. Jeopardy had not attached when the charges for making a forged instrument were dismissed. Moreover, defendant was not subsequently placed in jeopardy for the making of forged instruments when evidence of that conduct was introduced at his trial for uttering forged instruments.

Evidence which shows or tends to show an accused is guilty of other independent and distinct crimes from the crime charged is generally inadmissible; however, evidence of other criminal activities may be admitted in certain cases to prove an accused's identity, knowledge, intent, motive, or to demonstrate a common scheme or plan. *Jenkins v. State* (1985), Ind., 474 N.E.2d 84. In addition, evidence of noncharged crimes may be admitted under the theory of *res gestae* where each of the crimes is part of an uninterrupted transaction. *Bond v. State* (1980), 273 Ind. 233, 403 N.E.2d 812. *See also Tacy v. State* (1983), Ind., 452 N.E.2d 977 (evidence that defendant went on crime spree which included not only charged offenses of attempted murder and theft, but uncharged crimes of burglary, vandalism, theft and other criminal activity served the purpose of completing the story behind the charged offenses and was thus admissible); *Hare v. State* (1984), Ind., 467 N.E.2d 7 (fact that defendant had been acquitted of another robbery did not make testimony concerning that robbery inadmissible to show intent, motive, purpose, identity, or common scheme or plan).

The evidence challenged by defendant in this instance was clearly admissible to show intent, motive, opportunity, and plan in addition to completing the story behind the charged offenses. There was no error.

Defendant further contends the trial court erred in allowing his wife to testify concerning matters allegedly protected by the marital privilege.

On February 16, 1984, defendant, accompanied by his wife and her children, went to Bloomington where defendant engaged in the check cashing transactions giving rise to the charges in this case. The following day, while approaching a roadblock near Martinsville, defendant gave his wife $1500.00 in cash, a bankbook, and a driver's license. She put the money in her purse, and placed the bankbook and license in the glove compartment pursuant to defendant's instructions. Police arrested defendant at the roadblock and proceeded to search the car; however, they failed to discover the bankbook or the driver's license. At trial, defendant's wife testified she later examined the license and saw it bore defendant's picture and the name Gary Hooser, the same name to whom the forged checks were made. She also testified the bankbook entries appeared to be in defendant's handwriting, and that the bankbook indicated a current balance of approximately $2,000.00. After discovering the contents of the documents, defendant's wife destroyed them.

Defendant filed a motion to suppress evidence excludable under the marital privilege. The trial court ruled defendant's wife could testify as to the content of the documents and the fact that she later destroyed them; however, she was prohibited from testifying about the means by which she acquired them. In this appeal, defendant invites this Court to construe the privilege in such a manner as to mandate the exclusion of all information gained by reason of the marital relationship.

The marital privilege is linked historically to the rule of spousal incompetency. The two concepts are different in both policy and effect. If a witness is incompetent, his testimony is simply forbidden, as would be that of a person incapable of expressing himself or of understanding the duty to tell the truth. The marital privilege, on the other hand, can be waived by a defendant spouse and is subject to certain exceptions.

The concepts of competency and privilege appear to have evolved, at least in part, from the common law rule that all parties interested in the outcome of litigation were precluded from testifying. Moreover, husband and wife were not considered distinct individuals, but a unified

whole. The combination of these two early doctrines led Lord Coke to observe in 1628 "that a wife cannot be produced either against or for her husband...." 1 E. Coke, *A Commentarie upon Littleton* 6b (1628). As the common law notions of witness preclusion because of interest and "oneness in law" were gradually abrogated, the concept of spousal incompetency began to erode as well. This evolution was reflected in Indiana's legislative amendment in 1879 granting a witness spouse the ability to testify except as to communications made during the marriage. 1879 Ind. Acts, ch. CXXIII, § 1 at 245; *Brown v. Norton* (1879), 67 Ind. 424; *Hutchason v. State* (1879), 67 Ind. 449. Two years later, the legislature adopted the statute which remains unchanged today. Ind.Code § 34–1–14–5 provides in pertinent part:

> The following persons shall not be competent witnesses: * * * Husband and wife, as to communications made to each other.

Despite the language of our statute rendering a spouse "incompetent" with respect to communications, our prior cases have properly interpreted the statute as affording a privilege subject to waiver by the communicating spouse, and subject to exceptions. *See Sheperd v. State* (1971), 257 Ind. 229, 277 N.E.2d 165. In addition, although the statute does not include the term "confidential," we have consistently held the privilege only protects such communications "as pass from one to the other by virtue of the confidence resulting from their intimate relations with one another." *Beyerline v. State* (1897), 147 Ind. 125, 130, 45 N.E. 772, 774.

Since the time of the statute's enactment, this Court has followed the lead of other jurisdictions in recognizing that protected "communications" are not limited to utterances, but "include knowledge communicated by an act, which would not have been done by one spouse in the presence, or within the sight of the other, but for the confidence between them by reason of the marital relation." *Smith v. State* (1926), 198 Ind. 156, 162, 152 N.E. 803, 805. *See also Sheperd, supra; Perry v. Randall* (1882), 83 Ind. 143.

Obviously, many acts convey a meaning or message—a handshake, a waive, a grimace, a nod of the head. If confidential "communications" were limited to oral and written communication, application of the privilege becomes purely mechanical and the purpose is undermined to a great extent. On the other hand, if confidential "communications" were interpreted as embracing all information gained by reason of the marital relationship, the practical effect would be to enlarge the privilege to approximate incompetency. Such a position was adamantly rejected by this Court in *Smith, supra,* a case which involved a wife who, unknown to the husband, observed him disposing of a dead body in an outhouse:

> In many instances, actions have spoken louder than words, but nevertheless, actions, to gain shelter under the exception to the statutory rule here, must be clothed with that secrecy and intimate relation peculiar to the married state. In the case at bar, appellant was not acting in the confidence of his spouse, because he shielded the contents of the trunk from her knowledge. For aught that she knew from the act, the trunk might have contained any kind of rubbish. The manner in which the acts were performed indicates that they were not intended to be confidential communications to the wife. It seems the proper construction to place upon the acts is that they were intended to be not confidential between them, and that appellant by them did not seek the shelter of the intimacy of the marital relation. Evidence of the acts elicited by the question were not such communications made by appellant to his wife as are comprehended by the statute, § 550 Burns 1926, *supra.*

198 Ind. at 163, 152 N.E. at 806.

As noted by Professor Wigmore, "[t]he difficult cases are the in-between ones—those in which the act is done with the knowledge that the spouse is observing it but is not a mere substitute for words." 8 J. Wigmore, *Evidence* § 2337, at 657 (McNaughton rev. 1961). To formulate a precise test would be impractical. We find, however, that not all acts done privately in

the presence of the other spouse are protected by the privilege. Insofar as *Sheperd* has been construed as standing for such a proposition, it must yield to a more reasonable application.

Numerous courts and commentators have suggested the privilege serves no real function in the reality of married life.[4]

When confronted with the question of whether spousal testimony concerning knowledge communicated by an act should be excluded, it is important to ascertain whether the communicating spouse intended to convey a message to the other. There must be some indication the communicating spouse invites the other's presence or attention, and that any disclosure was an express manifestation of the intent to communicate the knowledge imparted by the act. When circumstances indicate the communicating spouse is indifferent to the presence of the other, the privilege would be inapplicable as it would do nothing to promote its purpose.

Viewing the facts of the instant case, we find the information contained in the license and bankbook did not fall within the scope of the marital privilege. When defendant and his wife approached the roadblock, defendant gave the items to his wife and instructed her to place them in the glove compartment. Defendant's act was merely one designed to conceal the money and the documents. The only message defendant could have arguable intended to convey was "conceal these items because they may incriminate me." Had such a message been intended, we presume it was intended to be confidential. Defendant's wife's testimony regarding the means by which she acquired the documents was therefore properly excluded by the trial

judge. There is no indication, however, defendant intended to share the information contained within those documents with his wife. It was only after defendant was arrested that his wife examined the license and bankbook, and then elected to destroy them. The content of the documents was not disclosed by defendant's act, but by the subsequent actions of his wife. We therefore conclude defendant's wife's testimony was properly admitted.

Defendant additionally alleges reversible error resulting from the trial court's admission into evidence of numerous handwriting samples taken from defendant. He first argues that some of the exemplars violated his Fifth Amendment right against compulsory self-incrimination because they were testimonial in nature.

The Fifth Amendment privilege against self-incrimination "reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, . . . .' " *Gilbert v. California* (1967), 388 U.S. 263, 266, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178, 1182. A handwriting exemplar, in contrast to the content of what is written, is an identifying physical characteristic outside the scope of Fifth Amendment protection. *Gilbert*, 388 U.S. at 266–67, 87 S.Ct. at 1953, 18 L.Ed.2d at 1183. *See also Gillie v. State* (1984), Ind., 465 N.E.2d 1380, 1386 and cases cited therein.

Defendant argues the handwriting exemplars in question were testimonial, and therefore violative of his Fifth Amendment rights, because he wrote names, things, and places dictated to him by the officer taking the exemplars. In support of his argument, defendant relies on *United States v. Campbell* (1984), 1st Cir., 732 F.2d 1017. However, unlike *Campbell*, we

---

4. *See State v. Drury* (1974), 110 Ariz. 447, 520 P.2d 495, *ovr'ld on other grounds, State v. Clark* (1975), 112 Ariz. 493, 543 P.2d 1122. Critics of the privilege argue that the "the occasional compulsory disclosure in court of even the most intimate marital communications would not in fact affect to any perceptible degree the extent to which spouses share confidences." 8 J. Wigmore, *Evidence* § 2332, at 642 (McNaughton rev. 1961). *See also* C. McCormick, *McCormick on Evidence* § 79, at 192 (E. Cleary 3rd ed.

1984) (". . . privileges in general, and this privilege for marital communication in particular, are inept and clumsy devices for promoting the policies they profess to serve, but are extremely effective as stumbling blocks to obstruct the attainment of justice.") *See also* Note, *The Joint Participation Exception to the Marital Testimonial Privilege: Balancing the Interests "In Light of Reason and Experience,"* 19 Ind.L.Rev. 647 (1986).

are not concerned here with an attempt to compel defendant to communicate his unique spellings. The fact defendant here was asked to write names and things which were identical to those written on the forged instruments does not make the exemplar testimonial. The substantive content of the exemplars was not communicative in any sense. The exemplars were used strictly for purposes of identification of the physical characteristics of defendant's writing and comparison with the forgeries.

█ Defendant also contends he was entitled to assistance of counsel during the taking of the exemplars. We disagree. The taking of handwriting exemplars from a defendant is not a critical stage of the criminal proceedings entitling defendant to assistance of counsel. There is minimal risk that the absence of counsel might derogate a defendant's right to a fair trial. *Gillie, supra. See also Gilbert*, 388 U.S. at 267, 87 S.Ct. at 1953, 18 L.Ed.2d at 1182–83.

█ Defendant further predicates error on the admission into evidence of a form containing defendant's signature which was written approximately fourteen years earlier. Defendant claims he was prejudiced because the form in question originated from the Indiana Reformatory, it had little evidentiary value because of its age, and the witness who testified that the defendant actually signed the form was a correctional officer at the reformatory. The record reveals, however, that these claims are unfounded. The form was introduced into evidence with a cover concealing the substantive content except for defendant's signature. Moreover, the witness's occupation as a correctional officer was not disclosed to the jury. Finally, we fail to see how the age of the signature could have caused defendant any undue prejudice. A handwriting expert used the signature for comparison purposes, and the age of the signature was disclosed to the jury. Admission of physical evidence is governed by the same rules of relevancy governing the admission of testimonial evidence. *McCurdy v. State* (1975), 263 Ind. 66, 324 N.E.2d 489. It is within the trial court's discretion to admit physical objects into evidence which are within the scope of matters covered on direct examination in a criminal trial. *Arnett v. State* (1969), 251 Ind. 685, 244 N.E.2d 912. We find no error.

█ Defendant also claims error in the admission of a handwriting sample taken by a police officer while defendant was being investigated on other unrelated criminal charges approximately four months before the crime in the instant case occurred. Defendant contends he was unduly prejudiced by the evidence because it permitted the jury to infer defendant was required for some reason to give a handwriting exemplar prior to the commencement of this particular case; thus, the jury would logically conclude defendant was the perpetrator of prior unrelated criminal activity. Again, the record fails to support defendant's claim. In ruling the exemplar was admissible, the trial court admonished the prosecutor to make no reference to defendant's prior incarceration. Neither the officer's occupation nor the circumstances under which the exemplar was acquired were revealed to the jury. The trial court has wide latitude in determining whether the probative value of evidence sought to be admitted is outweighed by its prejudicial impact. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied*, (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. We sense no abuse of discretion in admitting the evidence here.

█ Defendant also objects to the admissibility as substantive evidence of bank videotapes documenting the check transactions underlying the forgery charges. Defendant contends the State failed to lay a sufficient foundation for their admissibility.

Photographic evidence is admissible as substantive evidence under the "silent witness theory" adopted in *Bergner v. State* (1979), Ind.App., 397 N.E.2d 1012, an opinion cited with approval and embraced by this Court in *Stark v. State* (1986), Ind., 489 N.E.2d 43, *Groves v. State* (1983), Ind.,

456 N.E.2d 720, and *Torres v. State* (1982), Ind., 442 N.E.2d 1021.

The foundation requirements for the admission of photographs as substantive evidence under the silent witness theory are obviously vastly different from the foundation required for demonstrative evidence. However, we feel it would be wrong to lay down extensive, absolute foundation requirements. Every photograph, the context in which it was taken, and its use at trial will be different in some respect. We therefore hold only that a *strong* showing of the photograph's competency and authenticity must be established. Whether a sufficiently strong foundation has been laid is left to the sound discretion of the trial court, reviewable only for abuse. However, we stress our use of the adjective "strong." Photographs tend to have great probative weight and should not be admitted unless the trial court is convinced of their competency and authenticity to a *relative certainty*. (Emphasis in original).

*Bergner,* 397 N.E.2d at 1017. In suggesting some non-mandatory guidelines for the admission of such evidence, the court stated:

The date the photograph was taken should be established in certain cases, especially where the statute of limitations or the identify and alibi of the defendant are in question. In cases involving photographs taken by automatic cameras, such as Regiscopes or those found in banks, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera. *See Murry v. State,* (1979) [179] Ind.App. [305], 385 N.E.2d 469.

*Id.* Reviewing the evidence introduced prior to the admission of the videotapes, we find no abuse of the trial court's discretion in ruling the State established a sufficient foundation.

Paul Mullins, the assistant vice-president of the First National Bank, testified he was in charge of returned documents and dealt with the videotape equipment on a regular basis. His description of the general procedure for monitoring bank transactions with videocameras was corroborated by the assistant managers of the bank branches where the relevant transactions occurred. The tapes are self-contained units which do not require processing. Each contains a time measurement indicator which displays the precise time the recordings were made. Either the branch managers or assistant branch managers load the tapes in the videocameras which are set to run for 72 hours. The managers then remove the tapes, record the time and frame numbers, and then send the tapes to the auditing department for storage in a locked file. When the bank's film supply is exhausted, the tapes are reused.

In challenging the State's foundation for the admission of the videotapes, defendant points to the fact two of the tapes in question displayed incorrect dates, thus their reliability is questionable. Moreover, it is unclear who loaded, unloaded, and activated the videocameras at the relevant times. In addition, the State failed to conclusively foreclose the possibility that the tapes were altered in some manner. We do not view these facts as fatal to the admissibility of the videotapes in this case.

An assistant branch manager explained that at all times relevant to this case, an internal problem with a particular videocamera caused it to consistently display a date on the film which was a day ahead of the actual date. Nevertheless, the time displayed on the film was accurate. As for the question of who loaded, unloaded, and activated the videocameras, we are unpersuaded this is a critical determination considering it was such a routine procedure for bank managers to execute. To require conclusive evidence of the identity of those persons who actually performed the tasks in this situation ignores the context in which the defendant's criminal activities were documented. Finally, with regard to the alleged chain of custody problem, we note the State is not required to exclude

every reasonable possibility of tampering, but rather must only provide reasonable assurance that an exhibit has passed through various hands in an undisturbed condition. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. Such assurance was provided here. We therefore hold the State established an adequate foundation for the admission of the videotapes, and the trial court properly admitted them.

During the initial stages of the forgery investigation, police became aware of the existence of the bank's videotapes portraying defendant's banking transactions. Shortly thereafter, the bank inadvertently reused some of those tapes, but nevertheless preserved those portraying the two check cashing transactions for which defendant was prosecuted. Arguing the State negligently failed to preserve material and exculpatory evidence, defendant sought dismissal of the charges. Alternatively, defendant sought orders to suppress the preserved tapes and all testimony concerning events portrayed in the destroyed tapes. The trial court ruled adversely to defendant's position.

■ Defendant properly notes the underlying question in this issue concerns the scope of the prosecutor's duty to preserve and disclose material evidence as required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, the Supreme Court of the United States confronted an issue similar to that presented here, and unanimously held the Due Process Clause did not require law enforcement agencies to preserve breath samples of suspected drunk drivers in order for the results of breath-analysis tests to be admissible in criminal prosecutions. The Court stated:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. (footnote omitted) To meet this standard of constitutional materiality, see *United States v. Augurs*, 427 U.S., [97] at 109–110, 96

S.Ct. 2392, 49 L.Ed.2d 342, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. at 488–89, 104 S.Ct. at 2534, 81 L.Ed.2d at 422. Neither of these conditions is met on the facts of the instant case. We find no error on this issue.

Defendant contends the trial court erred in admitting into evidence certain loan documents purportedly signed by defendant representing himself as Gary Hooser. Defendant claims the documents, prepared and executed approximately one month prior to the uttering of the forged checks in question, were irrelevant to the case and therefore inadmissible.

Any evidence tending to connect the accused with the commission of the crime is admissible. *Baker v. State* (1984), Ind., 470 N.E.2d 346. All evidence is relevant if it tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused. *Cox v. State* (1985), Ind., 475 N.E.2d 664. A court and jury may learn through viewing an exhibit what they might have learned through listening to testimony describing it. *Thomas v. State* (1971), 256 Ind. 309, 268 N.E.2d 609. Admission of physical evidence is governed by the same rules of relevancy and materiality governing admission of testimonial evidence. *McCurdy v. State* (1975), 263 Ind. 66, 324 N.E.2d 489. It is within the sound discretion of the trial judge to admit physical objects into evidence which are within the scope of matters covered on direct examination in a criminal trial. *Arnett v. State* (1969), 251 Ind. 685, 244 N.E.2d 912.

The State proffered the signed documents (State Exhibits #16, #18, and #19) along with another loan document purportedly filled out by the defendant (State Exhibit #17) detailing information about the loan applicant's next of kin. Defendant responded, "Defense only objects to Exhibit 17 Your Honor." (R. 1722).

Thus, defendant waived any error concerning Exhibits # 16, # 18, and # 19.[5]

 Defendant contends the trial court erred in admitting into evidence State Exhibits # 8 and # 9. State Exhibit # 9 was a copy of an application for a duplicate driver's license which contained answers to numerous questions relating to the applicant's personal history and past driving record. The application bore the signature "Gary Hooser," below which was printed the following: "The above described applicant swears or affirms that all the statements made throughout and on the face of this application are true." State Exhibit # 8 was an information card containing the applicant's personal address, description, and the signature "Gary Hooser." Steven Ferrard, the assistant manager of the license branch, testified he was in charge of the records kept and maintained at the license branch, and he positively identified and properly authenticated the documents in question. Defendant objected to admission of the documents as a violation of his Sixth Amendment right to confrontation of the license branch employee who actually witnessed and notarized the signature. The trial court overruled defendant's objection and admitted the documents under the business records exception to the hearsay rule.

Hearsay evidence has been defined as follows:

> "Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." ...
> McCormick, Evidence, § 225 (1954).

*Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 266, 259 N.E.2d 651, 673, *cert. denied*, 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190.

In *Connell v. State* (1984), Ind., 470 N.E.2d 701, 705–06, Justice DeBruler stated:

The rule applies to written as well as oral statements, and relates to the competency of matter and not its relevance. It ".. excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to the truth of the matter asserted." 6 Wigmore, Evidence § 1766 (3d. ed. 1940). *Indianapolis Newspapers, Inc. v. Fields, Inc.* [sic], [25 Md. 219, 259 N.E.2d 651] supra at 674. The rule applies to statements of fact which can be considered true or false. If the questioned utterance is offered to prove the fact of the utterance and not offered to prove the truth of the facts asserted, then there is no hearsay. The fact of the utterance may safely rest for its evidentiary value upon the credibility of any witness who may have heard or read it and testifies to it in court. The rule guards against fact asserted in an utterance because it rests for its evidentiary value, not upon the credibility of any witness who may have heard it, but upon the actual asserter who is absent from the trial.

Although both the State and defendant maintain the documents fell into the business records exception to the hearsay rule, we observe that the documents were not introduced to prove the truth of the matters asserted therein. The prosecutor was unconcerned with information in the documents concerning Gary Hooser or his acquisition of a duplicate license. Wholly to the contrary, the prosecutor sought to prove that *defendant* was the individual who sought to obtain a duplicate license by making false statements under oath or affirmation. The documents were introduced only to show that the statements were made, not that they were true; thus, the documents were not hearsay.

This conclusion likewise disposes of defendant's Confrontation Clause argument. "The Confrontation Clause, like the hearsay rule, is not concerned with statements that are not offered to prove the truth of

---

5. Notwithstanding defendant's failure to preserve error on this issue, we note the State masked the substantive content of these three documents in such a manner that only the signatures were visible. The evidence was clearly relevant and admissible as evidence of defendant's identity.

the matter asserted." *United States v. Bruner* (1981), D.C.Cir., 657 F.2d 1278, 1285. We find no error.

### 9. Prosecutor's Closing Argument

Defendant cites nine instances of what he characterizes as prosecutorial misconduct which allegedly occurred during closing argument. In all but two of these instances, defendant either failed to raise any objection to the comments or failed to articulate a basis for an objection on the record. Thus, with regard to these alleged improper statements, defendant has failed to preserve any error committed by the trial court in permitting the prosecutor to make such statements. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

With regard to the two remaining issues, we look first to determine whether the act in question was misconduct, and then determine whether the act placed defendant in grave peril. *Maldonado, supra.* We describe and consider separately each of defendant's allegations.

■■■ During defendant's final argument, he referred to the testimony of a defense witness regarding the existence of a letter allegedly dictated and signed by Joseph Barker which purportedly authorized defendant to write and sign the checks on Barker's accounts. In the deputy prosecutor's closing argument, she posed a number of rhetorical questions concerning defendant's failure to introduce the letter into evidence:

> [W]hy didn't you see that letter? He was waving it around in his hand, ... but you never got to look at them. Ask yourself why. Is it because the defendant who wants to bring in the fact that somebody told you he had an IQ of 150, is it because he knows that that letter will not withstand the scrutiny of [the State's handwriting expert], any better than those checks? Is it because you could tell by looking at it yourself that it's phony?

(R. 2093).

Although defendant properly notes it is improper for counsel in argument to comment on matters not in evidence, *Adler v. State* (1961), 242 Ind. 9, 175 N.E.2d 358, it does not follow the prosecutor in this case was prohibited from pointing out the absence of evidence to support that which the defendant claimed to exist. Defendant placed the existence of the letter in issue and urged the jury to conclude the letter authorized him to write the checks. Defendant alone held the secret as to why the letter was not produced. The deputy prosecutor merely presented a range of possible explanations or conclusions that *could* be drawn with respect to the defendant's failure to produce the letter, and we find nothing in the case law or disciplinary rules to preclude such a tactic. Prosecutors in closing argument are entitled to respond to allegations and inferences by defense counsel during the latter's closing argument. *United States v. Robinson* (1988), 485 U.S. ——, 108 S.Ct. 864, 99 L.Ed.2d 23; *Goodman v. State* (1985), Ind., 479 N.E.2d 513. We find no error on this issue.

Defendant also objected to the prosecutor's comment that the judge was very lenient in allowing defendant to introduce documentary evidence. The court sustained the objection and admonished the prosecutor. The prosecutor apologized and retracted the statement.

This simple trial error was not of the magnitude to place the defendant in grave peril. Any undue prejudice was remedied by the trial court's admonition and the prosecutor's retraction of the remark.

### 10. Sufficiency of Evidence

■■■ Defendant asserts there is a complete lack of evidence to show he took an oath before signing Gary Hooser's name on the license application; thus, the State failed to show defendant knowingly made a false statement under oath. In addressing this sufficiency question, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E. 2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The application for a duplicate driver's license was notarized by a license branch employee. "The official certificate of a notary public, attested by his seal, shall be presumptive evidence of the facts therein stated, in cases where by law he is authorized to certify such facts." Ind.Code § 33-16-2-6. Thus the effect of the notarized document in this case was to give rise to the presumption that an individual, one Gary Hooser, swore under oath that all statements made in the document were true.

The presumption of the applicant's identity was adequately rebutted by the testimony of the State's handwriting expert that defendant, not Gary Hooser, signed the application. The presumption that the application was made under oath, however, was never rebutted by any evidence. A presumption is valid in a criminal case when the fact presumed is more likely than not to flow from the fact on which the presumption is based. *Walker v. State* (1984), Ind.App., 467 N.E.2d 1248; *United States v. Kelly* (1974), 7th Cir., 500 F.2d 72. Defendant has offered nothing to support the position that the one who signed the application was more likely than not to have been unaware of the oath. The presumption, standing alone, was sufficient to support the conclusion beyond a reasonable doubt defendant knowingly made a false statement under oath.

### 11. Sentence Reasonableness

■ The record reveals judgment was entered on the jury's verdict on August 25, 1984. On September 17, 1984, the case was set for sentencing on September 25, 1984, which was thirty-one days after judgment was entered. At the sentencing hearing, defendant filed a motion for discharge because the sentencing hearing was set beyond the statutory thirty-day limit provided in Ind.Code § 35-38-1-2:

(a) Upon entering a conviction, the court shall set a date for sentencing within thirty [30] days, unless for good cause shown an extension is granted.

Defendant now argues the trial court was without jurisdiction to impose the aggrava-

ted sentences in this action because of its non-compliance with the above statute.

We have previously recognized the court is excused from exact compliance with the thirty-day sentencing requirement where there is good cause for delay. *Williams v. State* (1986), Ind., 489 N.E.2d 53. *See also Taylor v. State* (1976), 171 Ind.App. 476, 358 N.E.2d 167. "Such cause may be presumed where the record is silent as to the reason for delay and the defendant made no objection." *Williams*, 489 N.E.2d at 57–58 (citing *Moore v. State* (1972), 154 Ind.App. 482, 290 N.E.2d 472; *Taylor, supra* ). Defendant contends he was unable to make a timely objection in this case because he was not advised of the sentencing date until Friday, September 21, when he received a letter from his assistant counsel, the public defender. Even if we assume this to be true, we think depriving the court of jurisdiction to impose aggravating sentences in this case "is out of proportion to the evil sought to be corrected." *Taylor*, 171 Ind.App. at 481, 358 N.E. 2d at 171 (referring to discharge of defendant for non-compliance with the thirty-day sentencing requirement).

Defendant also contends that because the jury acquitted him of the habitual offender charge, the trial court's motive in imposing consecutive aggravated sentences was to compensate for what it believed to be an erroneous verdict on the habitual offender count. This contention is unsupported in the record.

■ Defendant also argues the trial court improperly imposed enhanced sentences in this case because the court failed to consider a number of allegedly mitigating circumstances. In *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254–55, *reh'g denied*, 496 N.E.2d 1284, we stated:

When a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation. This is particularly true when an examination of the underlying record shows the highly disputable nature of the mitigating factors. Moreover, the trial court is not obligated to credit or weigh the defendant's evidence

of mitigating circumstances the same way the defendant does. [citations omitted]

All of the alleged mitigating circumstances cited by defendant are of a highly disputable nature. As for his contention that the crimes neither caused nor threatened serious harm to persons or property, this factor cannot be satisfied merely because defendant's actions posed no threat of serious harm to persons alone. *Wilkins v. State* (1986), Ind., 500 N.E.2d 747, 748–49 n. 1. Moreover, the record does not clearly support defendant's bald assertions that the victim induced or facilitated the offense and that substantial grounds exist to excuse or justify the crimes.

We reject defendant's assertion that the sentence was unreasonable because the conviction resulted from one single continuous series of transactions. Defendant was convicted of three distinct crimes. Concurrent sentences are not required.

Finally, defendant claims the trial court acted improperly in considering uncharged crimes and defendant's breach of trust in determining an appropriate sentence. The trial court did not expressly find these incidents to be specific aggravating circumstances. The aggravating factors enumerated in Ind.Code § 35–38–1–7(b) are not the only factors a trial court may consider in sentencing. *See* Ind.Code § 35–38–1–7(d); *Totten v. State* (1985), Ind., 486 N.E.2d 519. The trial court did not act improperly in considering defendant's uncharged crimes and his breach of trust.

Having reviewed the record and the trial court's sentencing statement, we do not find defendant's sentence "manifestly unreasonable in light of the offense and the character of the offender." App.Rev. of Sentences, Rule 2(1). We decline to modify the sentence.

### Conclusion

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.