BEYERLINE *v.* THE STATE.

[No. 17,945.   Filed Jan. 15, 1897.   Rehearing denied Feb. 25, 1897.]

AFFIDAVIT AND INFORMATION.—*Forgery.*—*Copy of Forged Instrument.* —*When Signed in German.*—Where one of the names alleged to be forged to a promissory note is written in German, the copy of such name to the note, set out in the affidavit and information charging such forgery, need not be written in German.   *pp. 126, 127.*

FORGERY.—*Uttering Forged Instrument.*— *Separate Offenses.*— *Former Acquittal.*—Forgery, and the uttering of a forged instrument

are two distinct crimes, and the plea of former acquittal, on a charge of uttering a forged instrument will not constitute a bar to a prosecution for the forgery of such instrument. *pp. 127–129.*

EVIDENCE — *Husband and Wife. — Confidential Communication.— Forgery.*—Evidence given by the wife of one charged with forgery that her husband forced her to sign one of the names to the forged note, he spelling the name as she wrote it, is not a confidential communication. *pp. 129–133.*

VERDICT.—*Separation of Jury Before Returning Verdict Into Court.* —No error is committed by the court in permitting the jury, after agreeing upon a verdict and sealing same up, to separate before returning the verdict into court. *pp. 133, 134.*

From the Allen Circuit Court. *Affirmed.*

*William P. Breen* and *John Morris, Jr.,* for appellant.

*William A. Ketcham,* Attorney-General, and *N. D. Doughman,* for State.

HOWARD, J.—The appellant was charged by affidavit and information with the forging of a promissory note, and on the trial was convicted of the offense charged, and sentenced by the court.

The errors assigned and discussed by counsel relate to the sufficiency of the affidavit and information, and the special answer, and also question the correctness of the action of the court in overruling the motion for a new trial.

In the affidavit and information it is charged, amongst other things, that the appellant "did then and there feloniously, falsely, and fraudulently, make, forge and counterfeit a certain promissory note purporting to have been made and executed by Fred Beyerline, George Beyerline (whose name is signed to said note in German characters), Jacob F. Schaefenacker, by and under the name of Jacob Schapvenacker, and Peter F. Poirson." In the copy of the note set out, these names appear as signed thereto, the name of

George Beyerline being followed in parenthesis by the words "in German."

Appellant contends that "because the name signed to the note in German and said to be, in English, 'George Beyerline,' is not set forth in the copy of the note exactly as it appears upon the note, appellant believes the affidavit and information were bad and should have been quashed."

We do not think so. It is true that if the forging were in a foreign language, an exact copy of the forged document, as made in the original, should be set out in the indictment, or affidavit and information, and this should be followed by an English translation. But, as said by Mr. Bishop, 1 New Crim. Proced., section 564, "if there is simply a name, like the signature of a note in forgery, and it is, for example, written in German or Gothic characters, and is the same name in English as in German, there is no need to aver that the signature is in German, and add a translation," citing *Duffin* v. *People,* 107 Ill. 113, 47 Am. Rep. 431.

But in the affidavit and information before us, the State did aver that the name was signed in German characters, and added a like statement after the signature itself. There could be no such thing, strictly speaking, as a translation of the name. It was the same whether written in script or print, in Roman, italic, old English or German letters. Words in a foreign language must be translated that we may understand their meaning and the thoughts expressed; but proper names serve only to indicate the persons that are known by such names. It is certainly enough to give such names in English, and to state, as was done in this case, that the names were written in the characters shown in the document alleged to have been forged.

The first paragraph of answer, or defense, is a plea

of former acquittal; and it is contended that the court erred in sustaining a demurrer to this plea.

It is averred in the plea so made that appellant had theretofore been charged by affidavit and information with the uttering and publishing of the same note he is here charged with forging, and that on a trial had upon such charge he had been acquitted. And the contention is that the charge of forging was included in the former affidavit and information.

Counsel say: "The first information charges that appellant did 'unlawfully, feloniously, fraudulently and knowingly utter, publish and pass, endorse and deliver to one Adam H. Bittinger, as true and genuine, a certain false, forged and counterfeit note,' etc. (here follows note); 'that of the signatures to said note, only that of the said Fred Beyerline and Peter Poirson were genuine; that the names of the said George Beyerline and Jacob Schapvenacher were false, and forged by the said Fred Beyerline with intent then and there and thereby feloniously, falsely and fraudulently to defraud the said Adam H. Bittinger,' etc."

It is admitted that such information was probably defective and might have been quashed upon motion; but it is contended that there was sufficient in it to sustain a conviction for forgery. Forgery, and the uttering of a forged instrument are two distinct crimes; and the charge in the information referred to in the plea of former acquittal is unquestionably one of uttering a forged instrument, and it is of that charge, and not of forgery, that the appellant was acquitted. Neither is it correct to say that the proof to sustain one charge is the same as would be required to support the other. It is true that it is stated in the information set out in the plea "that the names of the said George Beyerline and Jacob Schapvenacker were false, and forged by the said Fred Beyerline;"

but that is by way of recital, and not as a charge, the words being simply descriptive of the signatures to the note. Surely if such statement and description had been made showing that the names had been forged by another person named, it would not be contended by counsel that such other person would thereby be sufficiently charged with the crime of forgery.

The twenty-ninth reason for a new trial had reference to certain evidence given by appellant's wife, over his objection. She was called by the State and gave the following evidence, which was objected to: "I was in the kitchen ironing, and he [the appellant, her husband] came with the note and he took me by the back of the neck and led me into the bedroom. That was our room, we were living out at his mother's house, and I did not know what he wanted; and after I went into the bedroom he handed me this paper. He said I had to sign Mr. Schaefenacker's name on there. * * * And I did not know how to spell his name I had to sign. He spelled the name. He stood right over me and made me sign it, and so I signed it."

The objection made to this evidence was that it detailed a confidential communication made to the wife by her husband, and also that if there was any forgery shown, she committed it. It does not appear, however, from this evidence that there was, in fact, any communication from the husband to the wife, whether confidential or otherwise. A communication implies something communicated, knowledge imparted by one to another. This is rather evidence of a crime committed by the husband, or, which he forced his wife to aid him in committing; not of a communication made by him to her of any crime which he had committed.

In *Polson* v. *State*, 137 Ind. 519, it was held com-

petent for a wife to give evidence of the communication to her by her husband of a loathsome disease. "Such conduct on his part," said the court in that case, "was a gross breach of his duty as a husband, and he could not, therefore, shield himself from exposure in a court of justice, where such fact became material evidence in a cause, on the ground that it was a confidential communication."

In the conduct shown in the evidence here objected to, the husband, instead of being engaged in confidential communications, such as the marital relation would shield from public exposure, was occupied in a double wrong, abusing his wife, and using her as the instrument of his forgery.

It is not every conversation between husband and wife, nor every word or act said or done by either in the presence of the other, that is protected under the seal of secrecy, but only such communications, whether by word or deed, as pass from one to the other by virtue of the confidence resulting from their intimate relations with one another. Where the criminal, in seeking advice and consolation, lays open his heart to his wife, the law regards the sacredness of their relation, and will not permit her to make known what he has thus communicated, even as it will not ask him to disclose it himself. But if what is said or done by either has no relation to their mutual trust and confidence as husband and wife, then the reason for secrecy ceases. Accordingly, many conversations and actions by and between husband and wife have been held not to be privileged.

In *Beitman* v. *Hopkins*, 109 Ind. 177, which was an action to set aside an alleged fraudulent conveyance made by a husband to his wife, the wife was allowed to give evidence as to the negotiations between her and her husband, prior to, and resulting in the convey-

ance of the land to her.  The ruling of the trial court in admitting the evidence was approved, this court holding that the negotiations were in no sense such communications as are made incompetent by the statute.  So, in *Brown* v. *Norton*, 67 Ind. 424, it was held that a wife might testify as to a parol contract entered into between her husband and another person; and, in *Schmied* v. *Frank*, 86 Ind. 250, a like ruling was made concerning evidence given by a wife as to conversations between her and her husband, whereby she constituted him her business agent.  In *Williams* v. *Riley*, 88 Ind. 290, it was likewise held that a wife should have been permitted to testify that she was present when a certain note executed by her husband and others had been paid.  "Husband and wife," said the court in that case, "are no longer incompetent witnesses for or against each other, except that neither of them is allowed to testify in relation to a communication made by the other."  A similar holding was made in *Jack* v. *Russey*, 8 Ind. 180.

In divorce, and other like proceedings, a still larger liberty is permitted.  *Smith* v. *Smith*, 77 Ind. 80, was an action for divorce brought by a wife.  It was there held proper for her to testify as to her conduct as a wife, and as to her husband's habits of intoxication, and his abuse of her.  Also, in *Stanley* v. *Stanley*, 112 Ind. 143, being an action on an ante-nuptial bond given by the husband, it was held that the wife might testify as to the conduct of the husband in matters relating to the alleged violation of the conditions of the bond.  And in *Mainard* v. *Reider*, 2 Ind. App. 115, which was an action by a husband to recover for the seduction of his wife, the evidence of the husband as to statements made in his presence by his wife to her seducer was held competent.

In criminal prosecutions the restrictions as to the

competency of offered evidence are still further removed.

By section 504, Burns' R. S. 1894 (496, R. S. 1881), all persons not expressly excepted are declared to be competent as witnesses in civil actions. In the succeeding section , those excepted as incompetent are the insane, children under ten years of age, save in certain cases; attorneys, physicians and clergymen, as to confidential matters; and, "Sixth. Husband and wife, as to communications made to each other." Other exceptions, not necessary to state here, are made in the sections of the statute immediately following.

By section 1867, Burns' R. S. 1894 (1798, R. S. 1881), all persons competent to testify in civil actions are declared to be also competent in criminal prosecutions; and, in addition, three other classes of witnesses are named as competent, that is: the accused, if he wishes to testify; his acomplices, if they consent; and the injured party.

Under the last of these cases, it has been held that a wife, when the injured party, is competent to testify, even as to confidential communications between her and her husband. *Doolittle* v. *State*, 93 Ind. 272. It has also been held that for the purpose of showing the relations that existed between husband and wife, letters written by her to her husband might be read in evidence in a prosecution afterward instituted against him, in which he was charged with her murder. *Pettit* v. *State*, 135 Ind. 393. In *Perry* v. *Randall*, 83 Ind. 143, the actions of a husband in taking money belonging to another, counting it over, putting it into his pocket, and not returning it to the owner, all in the presence of his wife, were held to be confidential communications which could not be testified to by her, even though she avoided the statement of any words spoken by her husband. Yet, in *Hutchason* v. *State*, 67 Ind.

449, the testimony of a wife as to the acts of her husband in the commission of arson, was held competent; and, in *Jordan* v. *State*, 142 Ind. 422, a husband was permitted to testify as to a communication to him by his wife that she intended to burn a certain mill. The reason given for this last holding was that the husband was, under the statute above cited, an "injured party," being part owner of the mill which she was charged to have set on fire.

In the light of the interpretation so given. to the statutes relating to a wife's testimony, there can be no doubt that the evidence here objected to was competent. It was not concerning any confidential, or other communication made by the husband to the wife, but, as in several of the cases cited, was evidence of a crime committed by him in her presence. He, besides, forced her to aid him in the commission of the forgery; and appellant says that she herself committed the forgery. If she had been thus wrongfully accused by him, she might testify as an injured party; and if she were indeed an accomplice with him she might testify as such. If, on the other hand, as seems to have been the case, she was an abused and maltreated wife, forced also into the commission of a criminal action against her will, the marital relation had no connection with his act, and she might then also give evidence of the crime.

Appellant finally complains that the jury were allowed, after agreeing upon their verdict and sealing it up, to separate before they returned their verdict into court. This was done by leave of court, and there is nothing to show that it was not done in the presence of, and with the consent of appellant.

It is provided in clause second of section 1911, Burns' R. S. 1894 (1842, R. S. 1881), that a new trial shall be granted, "when the jury has separated with-

Board of Com'rs of Vigo County *et al. v.* The City of Terre Haute.

out leave of the court, after retiring to deliberate upon their verdict." The separation was here allowed by the court, and there is, besides, nothing to show that the appellant suffered any harm thereby. Even if the separation were without leave, as it was not, that would not be cause for a new trial if it appeared, as we think it does here, that no harm resulted to the appellant. *Creek* v. *State*, 24 Ind. 151; *Riley* v. *State*, 95 Ind. 446; *Clayton* v. *State*, 100 Ind. 201; *Drew* v. *State*, 124 Ind. 9. In case the jury had separated before agreeing upon their verdict, and sealing it up, we should have a different question.

The verdict was returned into court, and on being opened and read in the presence of the jury and the appellant, was acknowledged by the jury as their verdict. We can see no error in this. See *State* v. *Engles*, 13 Ohio 490.

No question is made as to the guilt of the appellant as charged in the affidavit and information. He was ably defended by accomplished and learned counsel, and he seems to have been convicted without the violation of any of his rights under the law.

Judgment affirmed.