**Richard L.C. GARDNER,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 89A01–9306–CR–210.**

Court of Appeals of Indiana,
First District.

Oct. 18, 1994.

---

David Puterbaugh, Centerville, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BAKER, Judge.

Appellant-defendant Richard L.C. Gardner contests his conviction for Burglary, a Class B felony [1]. Specifically, he argues that the trial court erred in: 1) holding a witness competency hearing without Gardner's presence thereby violating his constitutional right of confrontation, 2) denying Gardner's motion for continuance, 3) admitting testimony regarding other burglaries for which he was not charged, and 4) finding Gardner to be an habitual offender.

### FACTS

On the morning of September 21, 1990, the home of Jane and Robert Myers was burglarized. The home was located in a secluded, rural area of Wayne County, Indiana. The Myers' nearest neighbor resided a quarter of a mile away. Upon returning home from work for lunch, Jane noticed that the back door of her home had been kicked open. Inside, several drawers had been ransacked

and jewelry, coins and a handgun were missing.

The State charged Gardner with the burglary. A jury convicted him and also found him to be an habitual offender. The trial court sentenced Gardner to a term of ten years imprisonment, enhanced by ten years for aggravating circumstances, and enhanced an additional thirty years as a result of his habitual offender status, for a total of fifty years.

## DISCUSSION AND DECISION

### I. Right of Confrontation

Gardner contends that his confrontation rights guaranteed by the federal and Indiana Constitutions were violated when the trial court failed to procure his presence at the competency hearing for the State's key witness, Keith McCutchen. Although Gardner's attorney was present at the hearing, Gardner claims that he had additional information that he could have offered at the hearing to prove McCutchen's incompetency.

The confrontation rights guaranteed by the Indiana Constitution and the federal Constitution differ to some degree. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." General agreement exists that the essential purpose of the Sixth Amendment right of confrontation is to insure that the defendant has the opportunity to cross-examine the witnesses against him. *State v. Owings* (1993), Ind., 622 N.E.2d 948, 950.

In Indiana, criminal defendants have an independent right of confrontation arising from article 1, section 13, of the Indiana Constitution which provides: "In all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...." The Indiana clause contains both the right to cross-examination and the right to meet the witnesses face-to-face in the courtroom during trial. *Brady v. State* (1991), Ind., 575 N.E.2d 981, 988. Thus, Indiana's right of confrontation can be said to encompass the

---

1. IND.CODE § 35–43–2–1.

federal right which only guarantees an opportunity to cross-examine witnesses. *See id.*

In the present case, the trial court held a hearing to determine co-defendant Keith McCutchen's competency to testify at trial. Due to the trial court's oversight, Gardner, who was incarcerated at the time, was not transported to the hearing which proceeded in his absence. However, Gardner's counsel did attend the hearing and, after his objection to Gardner's absence was overruled, presented evidence. At the close of the hearing, Gardner's counsel indicated that additional medical evidence regarding McCutchen's competency might be obtained. As a result, the trial court stated that the competency hearing would continue at a later date if Gardner so requested. Thus, Gardner had the ability to later re-open the competency hearing and cross-examine McCutchen in Gardner's presence.

Moreover, Gardner had sufficient opportunity to cross-examine McCutchen at trial where he could have presented whatever evidence[2] he possessed to show that McCutchen was incompetent or to impeach his credibility. In a similar situation, our supreme court held that an ex parte proceeding granting the State's pretrial petition to issue subpoenas for certain witnesses did not violate defendant's right of confrontation. *Lee v. State* (1988), Ind., 526 N.E.2d 963, 966. In *Lee*, one subpoenaed witness failed to testify at trial; however, all the other subpoenaed witnesses did testify and were subject to cross-examination at trial. This was sufficient in affording Lee his right of confrontation. *Id.; see also McQuay v. State* (1991), Ind., 566 N.E.2d 542, 543 (trial court's limitation on defense's cross-examination of victim was not error because defense counsel had been given sufficient opportunity to impeach victim by pointing out inconsistencies between her testimony at the deposition and at trial); *Atkins v. State* (1990), Ind.App., 561 N.E.2d 797, 801 (defense attorney need not engage in extended questioning to preserve a defendant's right of confrontation; the critical inquiry is whether the opportunity to do so was given.)

The absence of a defendant from a deposition of a witness is another situation comparable to the defendant's absence at a competency hearing. In *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691, the refusal to permit a defendant to be present at the taking of a deposition did not deny him his right of confrontation guaranteed by the Indiana Constitution. In *Bowen,* the defendant did not request to be present and the trial court ordered the depositions of two victims to be taken without the presence of the defendant. The supreme court held that the right of face-to-face confrontation is applicable to those criminal proceedings in which the accused may be condemned to suffer grievous loss of either his liberty or his property. *Id.* 334 N.E.2d at 695. The taking of a deposition to discover information cannot directly have such consequences upon an accused, although a trial or a parole revocation proceeding may. *Id.* 334 N.E.2d at 695.

We find the situation in the present case, a witness competency hearing, to be similar to deposing a witness. In both instances, the defendant will not suffer grievous loss of his liberty or property, as he may at a trial. Moreover, when a competency hearing is involved there is an even lesser threat of grievous loss to the defendant, than in a deposition situation, because the merits of the case are not at issue in a competency proceeding and testimony from the hearing is not introduced at trial. The only issue is whether the witness is competent to testify. Thus, we conclude that because Gardner had sufficient opportunity to cross-examine McCutchen face-to-face, at trial or by requesting a subsequent competency hearing, this afforded Gardner his right of confrontation under the federal and Indiana constitutions.

## II. Motion for Continuance

Gardner alleges that the trial court erroneously denied his motion for a continuance of his trial which he requested because he had

---

**2.** Gardner does not specifically tell us what information he would have presented had he been present at the hearing to prove McCutchen was incompetent. For all we know, defense counsel may have, in fact, presented this evidence at the hearing or at trial.

not received a medical report from a doctor who had examined McCutchen.

 Denial of a motion for continuance lies within the sound discretion of the trial court and will be reviewed only for abuse of discretion. *Hazelwood v. State* (1993), Ind. App., 609 N.E.2d 10, 13. An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court, *Id.* at 13, or where the record shows the defendant was prejudiced by the denial of the continuance. *Vaughn v. State* (1992), Ind., 590 N.E.2d 134, 136.

 Gardner claims he was prejudiced by the court's denial of his motion for a continuance because he had not yet received McCutchen's medical reports. Gardner appears to be asserting, without any citation to authority, that because McCutchen has AIDS he was mentally incapacitated and incompetent to testify as a witness for the State. However, Gardner failed to explain, to the trial court or in his appellate brief, how the medical report would support his contention. His general contention that the medical records would show McCutchen to be incompetent is insufficient. *See Ingram v. State* (1989), Ind., 547 N.E.2d 823, 828 (trial court properly limited defendant's cross-examination where defendant failed to identify the relevance of the testimony he sought to procure). As a result, the trial court had no way of perceiving how additional time would have aided in Gardner's defense. Because Gardner did not explain what the report would prove, he failed to show he was prejudiced by the trial court's denial of his motion for a continuance.[3] Hence, no abuse of discretion occurred.

### III. Evidence of Other Crimes

Gardner argues that the trial court erred in admitting testimony regarding two other burglaries for which he was not charged.

 A trial court's decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Shaw v. State* (1992), Ind.App., 595 N.E.2d 743, 747. Gardner correctly notes that evidence of other uncharged criminal acts is generally inadmissible to prove that the defendant has a certain character trait and acted in conformity with that trait in committing the present, charged crime. *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1339 (adopting Federal Rule of Evidence 404(b)).[4] Gardner also concedes that there are exceptions to this general rule. F.R.E. 404(b) provides that other uncharged crimes are admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. One way to prove that a defendant had a common scheme or plan is to allow proof of identity by showing the defendant committed other uncharged crimes with an identical modus operandi such that the methods employed in both crimes are so strikingly similar as to comprise a "signature" of the accused. *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129.

 In order to show Gardner's common plan and identity, the State offered the testimony of Penny Grimes and Tammy Ford whose homes were also burglarized on the same morning as the Myers' residence. Both Ford and Grimes testified that their homes were located in secluded, rural areas of Fayette County, Indiana, such that each home is situated some distance from its nearest neighbor. Further, Ford recounted that the door knob on a side door to her house had been crushed and jewelry, coin collections and silver had been removed. Grimes testified that the back door to her home had been kicked in and a jar of loose change, a VCR, and a Nintendo game were missing.

---

3. Moreover, continuances allowing for preparation are not favored. *Baxter v. State* (1988), Ind., 522 N.E.2d 362, 366. In the present case, the trial court had already granted continuances on two prior occasions pursuant to Gardner's requests for more time to obtain a physician to examine McCutchen. Thus, Gardner had already been afforded sufficient time to obtain the medical report.

4. The new Indiana Rules of Evidence were adopted and became effective January 1, 1994. Indiana's new Evidence Rule 404(b) is almost identical to F.R.E. 404(b). The only difference is that Indiana omitted the word "opportunity".

Gardner claims that the testimony concerning the burglary at the Ford and Grimes residences is not sufficient to prove that he had a common plan or his identity as the perpetrator because the method of entry into the residences differed. Specifically, he points out that entry into the Ford home was gained by crushing the door knob on a side door while entry at the Grimes residence, was made by kicking in a back door. We find Gardner's contention that the differences in the manner of entry preclude establishment of a signature or modus operandi to be risible. The burglaries committed at the Ford and Grimes homes were nearly identical to the burglary committed at the Myers' residence. All the burglaries were committed on the same morning in secluded, rural areas. Although the Ford and Grimes burglaries occurred in Fayette County and the Myers' burglary took place in Wayne County, the counties directly abut each other. Further, doors were broken to gain access to the homes and similar items were taken. Accordingly, the trial court did not abuse its discretion in admitting the testimony.

## IV. Habitual Offender Status

Next, Gardner argues that there was insufficient evidence to support the jury's finding that he is an habitual offender. To sustain an habitual offender enhancement, the State must demonstrate that the defendant was twice convicted and twice sentenced for prior felonies. *Clark v. State* (1992), Ind.App., 597 N.E.2d 4, 12. IND. CODE § 35–50–2–8(b) requires that the prior felonies be "unrelated". This requirement means that the commission of the second offense was subsequent to the conviction and sentence upon the first offense. *Id.*

At the habitual offender hearing, the evidence showed that Gardner had accumulated the following prior felonies:

| offense | committed | convicted & sentenced |
|---|---|---|
| # 1 Battery [5] | 10–31–84 | 4–2–85 |
| # 2 Receiving stolen property [6] | 3–20–89 | 11–20–89 |

Gardner asserts that these felonies are not sufficient for habitual offender purposes because the only proof offered as to the commission date of offense # 2 is the indictment which states that it occurred on or about March 20, 1989. He continues, without citation to authority, that an indictment showing that an offense occurred on or about a date is not sufficient to establish the commission date beyond a reasonable doubt. Gardner is mistaken. The date upon which an offense may have been committed may be found in the State's charging instruments. *Johnson v. State* (1993), Ind.App., 617 N.E.2d 559, 562. Moreover, a collateral attack on the validity of a previous conviction is not available to a defendant on an habitual criminal charge. *Goliday v. State* (1988), Ind., 526 N.E.2d 1174, 1176.

Gardner also argues that the State failed to prove that he is the same individual who was convicted of offense # 2. The indictment and final judgment of offense # 2 list "Richard C. Gardner" as the defendant. Gardner claims that he is "Richard L.C. Gardner" and not the individual who was convicted of offense # 2. The State, in an attempt to prove that the two names refer to the same individual, called Elizabeth Owens as a witness. Owens was Gardner's probation officer for the felony conviction of receiving stolen property. She testified that she had seen Gardner for a probation meeting and that he was the same individual as the one in the present action. Gardner, however, asserts that Owens is mistaken in her identification of him because she also testified that the man she supervised had B.S. tattooed on his upper right shoulder. Gardner, in fact, has no tattoo on his right shoulder. Nevertheless, Gardner's argument is merely a request for this court to reweigh the evidence. We note that it is for the trier of fact to determine the weight of the evidence and credibility of witnesses. *Tiller v. State* (1989), Ind., 541 N.E.2d 885, 893. The jury, having weighed the evidence, concluded that

---

5. IND.CODE § 35–42–2–1, a Class C felony.

6. KY.REV.STAT.ANN. § 514.110(3), a Class D felony.

"Richard C. Gardner" and "Richard L.C. Gardner" are one and the same person. We hold that the evidence is sufficient to sustain the jury's habitual offender finding.

Judgment affirmed.

NAJAM and RILEY, JJ., concur.